UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

STEFFANY BRUNA RODRIGUES )
DE OLIVEIRA )
 )
         Petitioner )
 )
    v. )                    No. 2:25-cv-00291-LEW
 )
KEVIN JOYCE, Sheriff of Cumberland )
County, PATRICIA HYDE, Boston )
Field Office Director, U.S. Immigration )
and Customs Enforcement, KRISTI )
NOEM, Secretary of the U.S. )
Department of Homeland Security, )
and PAMELA BONDI, United States )
Attorney General, )
 )
         Respondents )

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Steffany Bruna Rodrigues De Oliveira's Petition for Writ of Habeas Corpus (ECF No. 1).   For the following reasons, the petition is conditionally GRANTED, as further explained in the conclusion of this Order.

## BACKGROUND[1]

Petitioner is a Brazilian citizen.   Nine years ago, she entered the United States without any documentation permitting her entry.   United States Customs and Immigration Services began removal proceedings against the Petitioner.   However, her order to appear

---

[1] This background is drawn from Petitioner's Writ, Respondents' Response (ECF No. 12), and the evidentiary hearing held on June 30, 2025.

in immigration court merely listed an appearance date of "a date to be set" and she was paroled into the United States for a period of one-year. Compl. App'x (ECF No. 2-1) at 2. Under the applicable regulations, Petitioner was classified as an "arriving alien." 8 C.F.R. § 1001.1(q).[2] Plaintiff's parole into the United States made her, like a great many others, the beneficiary of an especially lax, long-term policy of catch and release at the border. Lax because she was supposed to be immediately removed under the Nation's immigration law. 8 U.S.C. § 1225(b)(2)(A).

In 2021, while still in the United States, Petitioner was kidnapped and assaulted by her ex-boyfriend. She aided police and prosecutors in their investigation and the ex-boyfriend was arrested and removed from the United States. As a victim of a crime who was helpful to law enforcement, Petitioner applied for a "U-Visa."[3] Although she received no deferred action and remained on parole, Petitioner's removal proceedings were administratively closed while she sought her U-Visa. To date Petitioner has not received a decision on her U-Visa application.

---

[2] The regulation provides:

> The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means . . . . An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.

8 C.F.R. 1001.1(q).

[3] "U nonimigrant status" or a "U-Visa" is a type of visa set aside for victims of certain crimes who cooperate with law enforcement to investigate or prosecute the crime. *See* 8 C.F.R. § 214.14(b). U-Visa issuances are capped at 10,000 per year. *Id.* § 214.14(d)(1). The Customs and Immigration Service creates a waitlist for applicants who have not received a final decision before the cap is reached. *Id.* § 214.14(d)(2). Applicants on the waitlist receive either deferred action or parole as to their removal proceedings.

At some point in time, Immigration and Customs Enforcement ("ICE") learned that Petitioner had acquired a criminal history in the United States while her U-Visa application was pending.  Between 2019 and 2025, Petitioner had a series of arraignments for various offenses, all of which were subsequently dismissed.  ICE selected Petitioner for arrest and began observing her last known address.  ICE officers approached Petitioner's father, Antonio De Oliveira, in his driveway.  Mr. De Oliveira told them that Petitioner lived in the basement of the house and allowed them inside.  The officers then entered the basement and ordered Petitioner to leave her room.  When she did, ICE arrested her and served her with a "Warrant for Arrest of Alien."

Since her arrest, Petitioner has been detained in the Cumberland County Jail. Petitioner requested a bond hearing.  However, pursuant to a Department of Justice regulation, immigration judges cannot make custody redeterminations for "[a]rriving aliens in removal proceedings, including persons paroled after arrival." 8 C.F.R. § 1003.19(h)(1)(i)(B).  The immigration judge therefore denied the request on the grounds that the Immigration Court had no jurisdiction to redetermine Petitioner's custody.  For some bewildering reason, despite decades of catch and release at the border, the legality of this regulation has yet to be addressed.

Ms. Rodrigues De Oliveira now seeks collateral review in this United States District Court through a Petition for a Writ of Habeas Corpus.  In addition to complaining of the denial of a bond hearing, Petitioner contends that ICE's entry into her residence and her arrest were unreasonable and in violation of her Fourth Amendment rights.  She also argues that her detention without a bond hearing violates her Fifth Amendment due process rights.

Petitioner therefore requests that the Court assume jurisdiction, declare her detention a violation of her constitutional rights, issue a restraining order preventing her transfer out of the State of Maine, order her release, and award her attorney's fees.

Following receipt of the Verified Petition, the Court issued an Order to Show Cause (ECF No. 5) that directed the Respondents[4] to address the merits of the Petition. *See* 28 U.S.C. § 2243. In their Response (ECF No. 12), Respondents first contend that this Court has been stripped of subject matter jurisdiction. Barring that, Respondents argue that no constitutional violation has occurred.

An evidentiary hearing was held on June 30, 2025. That same day, Petitioner had her final removal hearing where an immigration judge ordered her removal. Petitioner has reserved her appeal of that order. There is the potential that Petitioner's detention will continue for a considerable duration pending resolution of her appeal, such that the order of removal does not tend to moot her constitutional challenges.[5] Accordingly, I address her habeas claims, basing the following analysis on the evidentiary hearing and the underlying papers.

**DISCUSSION**

A.    JURISDICTION

Respondents first contend that the Court has no jurisdiction to hear any of petitioner's claims. Their basis is 8 U.S.C. § 1252(b)(9), which provides:

---

[4] The Response takes positions only as to the federal officials, not Sheriff Joyce. For simplicity, this Order refers to the federal respondents as Respondents and/or the Government.

[5] Because Petitioner reserved her appeal, she is not yet in the "removal period" where her detention would be mandatory. 8 U.S.C. § 1231(a)(1)-(2). Petitioner's detention is still governed by the statutes and regulations that she challenges here.

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

As parsed by the First Circuit, section 1252(b)(9)

> aims to consolidate "all questions of law and fact" that "arise from' either an "action" or a "proceeding" brought in connection with the removal of an alien. Importantly, the statute channels federal court jurisdiction over "such questions of law and fact" to the courts of appeals and explicitly bars all other methods of judicial review, including habeas.

*Aguilar v. U.S. Immigration and Customs Enforcement*, 510 F.3d 1, 9 (1st Cir. 2007).[6]

As Judge Nancy Torresen recently noted, "the question of whether [Petitioner's] claims 'aris[e] from' removal proceedings . . . is less straightforward than the Government suggests." *Mboko v. Joyce*, No. 25-cv-00240-NT, ECF No. 21 at 6 n.6, 2025 WL 1697012, at *3 n.6 (D. Me. June 17, 2025). In *Aguilar*, the First Circuit observed that Congress's use of "arising from" in section 1252(b)(9) means the jurisdiction-stripping impact of the statute is not "limitless in its scope." 510 F.3d at 10 ("[T]hese words cannot be read to swallow all claims that might somehow touch upon, or be traced to, the government's

---

[6] I use *Aguilar* as the standard for my analysis even though, post-*Aguilar*, the Supreme Court interpreted section 1252(b)(9). *See Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). *Jennings* produced three separate interpretations of section 1252(b)(9). A plurality concluded that the legal questions associated with the assessment of a prolonged detention claim did not "arise from" removal proceedings. *Id.* at 840 (Alito, J.) (plurality opinion). A concurrence suggested section 1252(b)(9) strips jurisdiction over claims that arise from any "congressionally authorized portions of the deportation process that necessarily serve the purpose of . . . removal." *Id.* at 854 (Thomas, J., concurring in part). A dissent concluded jurisdiction is unaffected by section 1252(b)(9) where petitioners do not challenge an order of removal. *Id.* at 876 (Breyer, J., dissenting). None of these interpretations are binding, nor has the First Circuit had an opportunity to address them. As such, *Aguilar* is the controlling precedent.

efforts to remove an alien.").  The First Circuit therefore concluded that section 1252(b)(9) did not strip federal courts of jurisdiction over "claims that are independent of, or wholly collateral to, the removal process.  Among others, claims that cannot effectively be handled through the available administrative process fall within that purview."  *Id.* at 11.

Although one would expect that a dispute over the propriety of detention pending removal proceedings would be something other than collateral to the removal process, that is not the way it turns out in practice.  *See*, *e.g.*, *Demore v. Kim*, 538 U.S. 510, 516-17 (2003) (hearing habeas claim because it challenged the "statutory framework that permits detention without bail" rather than an exercise of discretion by the Secretary); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021) (same, "cabin[ing] the discretion granted [to the Attorney General] through the constitutional restraints applicable to all government action," while preserving the Attorney General's ability to exercise discretion "within those limits").  I see this case as following the same jurisdictional line as *Kim* and *Hernandez-Lara*.  The record before me simply fails to depict any reasoned exercise of discretion by the Attorney General or her designee other than the discretion exercised by the officers in relation to the decision to arrest the Petitioner.  Furthermore, and in any event, Petitioner here challenges the legality of a regulation that has deprived her of a bond hearing before an immigration judge, such that her habeas challenge is focused on the "statutory framework" that subjects her to mandatory detention without the possibility of release on bond.  *Kim*, 538 U.S. at 517.  For this reason, I conclude that I have jurisdiction to rule on Petitioner's habeas claims.

## B.    MERITS

A court may grant a writ of habeas corpus to a petitioner who demonstrates his or her detention is in violation of the constitution or federal law.  28 U.S.C. § 2241.  The petitioner must prove illegal detention by a preponderance of the evidence.  *See Aditya W.H. v. Trump*, 2025 WL 1420131, at *7 (D. Minn. 2025) (collecting authority).

Petitioner challenges her ongoing detention on two grounds.  First, Petitioner argues her Fourth Amendment rights were violated by ICE's entry into her house and her subsequent arrest.  Second, Petitioner claims that the denial of a bond hearing was in violation of her due process rights.  For the following reasons, I find petitioner has failed to prove that the Fourth Amendment calls for her release, but the Due Process Clause of the Fifth Amendment does call for a detention or bond hearing, at least in this Circuit, because Petitioner's and the Respondents' respective interests under *Mathews v. Eldridge*, 424 U.S. 319 (1976), balance out in this case the same way they balanced out in *Hernandez-Lara*, and, consequently, I am bound to follow that precedent, whether that precedent feels like a self-gratifying exercise in immodest judicial activism or not.

### 1.    Fourth Amendment Claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. am. IV.  Petitioner contends that ICE's basement search was performed without a warrant and in an unreasonable manner, in violation of the Fourth Amendment.  However, at oral argument Petitioner's counsel conceded that ICE had consent to search the basement, and thus no Fourth Amendment violation occurred.

7

Petitioner's argument for unlawful arrest is mostly predicated on her supposition that she was arrested without a warrant. *See* Writ at ¶ 24. The Government contends that ICE served Petitioner with an I-200 warrant. Certain immigration officers have the power to issue these warrants for the arrest of aliens. 8 C.F.R. § 287.5(e)(2). Once issued, ICE officers may detain noncitizens pending removal proceedings. 8 C.F.R. § 236.1(b); 8 U.S.C. § 1226(a). I-200 warrants attest to probable cause that the arrestee is removable. *See Abriq v. Nashville*, 333 F.Supp.3d 783, 787 n.3 (M.D. Tenn. 2018).

Surprisingly, in this case the Government did not produce, to the Court, the I-200 warrant that ICE officers presented at Petitioner's arrest. The Government's contention concerning the I-200 warrant is based exclusively on the declaration of an ICE Assistant Field Office Director, who swears ICE served petitioner with an I-200 warrant. Gov't Ex. 1 ¶ 17. But the serving of a warrant, alone, does not prove that the warrant attested to probable cause that Petitioner was removable. The Government invites the Court to be an evidentiary God of the gaps and find probable cause without the hassle involved in examining the actual warrant, the production of which is surely a light lift for the Government. I decline the invitation and would describe it as one zip code away from slipshod. The I-200 warrant is a fascinating tool that is all but self-executing, issued to ICE agents by ICE agents without a neutral third-party to review its integrity. Given this half mile head start gifted to the executive branch by either political cowardice or judicial apathy or both, I don't think it too pedantic to expect the warrant to be part of the record in similar proceedings.

Nonetheless, the Court does not need to continue habeas proceedings to further

delve into the warrant or probable cause requirements. Petitioner's argument that an illegal arrest automatically results in an illegal detention is misguided. As the Government points out, "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest . . . occurred." *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). Put differently, "[t]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." *Id.* (quoting *In re Lopez-Mendoza*, No. A22452208 (BIA, Sept. 19, 1979)). Thus, even if Petitioner's initial arrest was unlawful, her detention pending removal may stand. This leaves Petitioner's due process claims.

## 2.    Due Process Claim

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. am. V. The Fifth Amendment applies in full force to aliens facing removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Petitioner argues that her detention without a bond hearing is in violation of her Fifth Amendment rights and that due process requires the Government to prove she is a flight risk or danger to the community before detaining her.

To assess Petitioner's due process challenge to detention, it would be useful to first determine precisely what statutory and regulatory provisions called for Petitioner's detention. The Government contends Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225. Petitioner contends that she was not actually detained under 8 U.S.C. § 1225(b), but under 8 U.S.C. § 1226(a), which generally calls for discretionary detention except for certain disfavored groups of noncitizens, such as criminal aliens. That statute

provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a).  Once arrested, the noncitizen is subject to discretionary detention pending his or her removal proceedings.  *Id.* § 1226(a)(2) ("[T]he attorney general . . . may release the alien on bond . . . [or] conditional parole.").  It is a mystery why the answer to this riddle eludes the parties.  Surely, the Government ought to at a minimum be able to direct us with metaphysical certainty to the statute under which Petitioner was detained.  That even that baseline determination is cloaked in enigma is sadly in keeping with our Nation's immigration "policy" and laws overall, which are a byzantine patchwork of obtuse, incomplete and often contradictory etchings on the cave wall, illuminated mostly by Sturm and Drang.

If section 1226 is applicable to the petitioner, it does let in a little light in terms of there being a statutory basis for the possibility of a bond or parole hearing.  But the case law in this area is predictably, invariably a muddle.  *Compare*, *e.g.*, *Florida v. United States*, 660 F.3d 1239, 1275-1276 (N.D. Fla. 2023) ("[W]hat [ICE] certainly may not do is initiate an inspection under § 1225 and then, at some later time, attempt to shift the alien's detention to § 1226(a)), *with Rodriguez v. Bostock*, No. 25-cv-05240, 2025 WL 1193850, at *5 (W.D. Wash. Apr. 24, 2025) (quoting Bureau of Immigration Appeals unpublished decision) ("If the individual [initially inspected under section 1225] was issued a warrant of arrest with a notice to appear, 'he would be subject to detention' under Section 1226").  Furthermore, preoccupation with technical concerns over 1225 processing versus 1226 processing for detention only exalts form over substance insofar as the Due Process Clause,

writ large, is concerned, at least in this case involving a prolonged period of parole. I therefore proceed on the assumption that Petitioner was detained under section 1225, though it does not prove dispositive to my analysis.

Per section 1225, noncitizens who arrive in the United States and are paroled into but not "admitted" into the United States are "applicants for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission are inspected by immigration officers, as was the case for Petitioner nine years ago. *Id.* § 1225(a)(1)(3). If the examining officer finds the noncitizen "is not clearly and beyond a doubt entitled to be admitted," then the noncitizen is subject to mandatory detention pending removal. *Id.* § 1225(b)(2)(A). However, there is a carve-out that authorizes temporary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Parole is not admission, and once its purpose is fulfilled the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* Parole under section 1182(d)(5)(A) terminates either upon written notice served to the noncitizen or automatically when the time for which it was authorized expires. 8 C.F.R. § 212.5(e)(1)-(2).

It is not clear to me whether Petitioner was truly paroled for humanitarian reasons or simply paroled pursuant to a policy of catch and release at the border. Nor is it clear whether a policy of catch and release at the border is even lawful. *Biden v. Texas*, 597 U.S. 785, 804 (2022). The question is whether the fact that Petitioner was "caught" at the border and subject to mandatory removal—even if only in the liminal sense—means that she is

now, nine years later, subject to a due process disadvantage because of it. *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) ("[Excepting parole,] there are no *other* circumstances under which aliens detained under § 1225(b) may be released.").

Although Petitioner ostensibly was arrested, detained, and processed for removal due to criminal charges pressed against her, the dismissal of those charges places Petitioner in a category different from the criminal alien, Kim, who conceded he was deportable and whose detention pending removal without hearing was upheld by the Supreme Court. *Kim*, 538 U.S. at 513, 523 (observing that "this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process," but cabining its holding to be that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings"). Moreover, if there were any doubt, Respondents do not rely on any of the crime-related provisions affecting alien status as cause for Petitioner's removal. They rely only on the fact that Petitioner entered into the status of one subject to expedited removal under section 1225 before she was paroled and allowed to remain in the United States (for nine years).

Petitioner cites *Hernandez-Lara v. Lyons*, in which the First Circuit held that "due process requires the government to either (1) prove by clear and convincing evidence that [an alien] poses a danger to the community or (2) prove by the preponderance of the evidence that she poses a flight risk" in order to impose detention throughout the period of removal proceedings, including appeals. 10 F.4th 19, 41 (1st Cir. 2021). That conclusion

rested on a *Mathews v. Eldridge* due process analysis for a non-criminal alien who unlawfully entered the United States without being processed at the border. *Id.* at 27-35. The *Mathews* factors[7] all cut in favor of Hernandez-Lara, at least as analyzed by two members of the First Circuit. *Id.* When I consider Petitioner's predicament, I find it difficult if not impossible to materially distinguish her from the habeas petitioner Hernandez-Lara in terms of the *Mathews v. Eldridge* factors. In fact, the intentional parole of Petitioner for nearly a decade places her in a more favorable light than Hernandez-Lara insofar as Petitioner's presence in the United States for nine years can be directly attributed to the Government. Consequently, I conclude that I am bound to follow that precedent in this case.

## CONCLUSION

The Petition for a Writ of Habeas Corpus (ECF No. 1) is conditionally GRANTED. Respondents are ORDERED to hold a hearing within 30 days before an immigration judge to consider Petitioner's entitlement to release on bond pending the conclusion of her removal proceedings and to release her on bond unless the Government carries the burden prescribed by the First Circuit in *Hernandez-Lara*. During the 30-day period, the removal of Petitioner from the District of Maine is ENJOINED.[8]

---

[7] The factors are as follows: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Hernandez-Lara v. Lyons*, 10 F.4th at 28 (quoting *Mathews*, 424 U.S. at 335).

[8] The Immigration Court and the Board of Immigration Appeals are administrative entities overseen by the Department of Justice rather than the Judicial Branch. As such, this Order is properly directed toward Respondent Pamela Bondi.

**SO ORDERED.**

Dated this 2nd day of July, 2025.

/S/ Lance E. Walker
Chief U.S. District Judge